IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:09cv365
(3:06cr453-3)

| | |
|---|---|
| STONEY GRANT, ) <br> ) <br> Petitioner, ) <br> ) <br> v. ) <br> ) <br> UNITED STATES OF AMERICA, ) <br> ) <br> Respondent. ) <br> _____ ) | O R D E R |

**THIS MATTER** is before the Court upon Petitioner's Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255. (Doc. No. 1). For the reasons stated below, Petitioner's motion will be denied and dismissed.

I.   FACTUAL AND PROCEDURAL BACKGROUND

On December 20, 2006, a grand jury charged Petitioner and two other individuals with conspiring to possess with intent to distribute a mixture containing a detectable amount of 3,4-Methylenedioxymethamphetamine, also known as "MDMA" and "Ecstasy," in violation of 21 U.S.C. §§ 846 and 841(b)(1). (Case No. 3:06cr453, Doc. No. 13: Indictment). On February 2, 2007, Petitioner appeared before the Court for a detention hearing, after which he was released on a $25,000 unsecured bond. (Id., Doc. No. 31: Release Order). The Court's Order directed, inter alia, that Petitioner not commit any offense in violation of federal, state or local law while on release; that he refrain from possession of illegal drugs or other controlled substances; and that he report, as soon as possible, to his pre-trial services officer any contact with any law

enforcement personnel, "including but not limited to, any arrest, questioning or traffic stop." (Id. at ¶¶ 1, 7(m) and 7(r)).

On February 16, 2007, Petitioner entered into a Plea Agreement by which he agreed to plead guilty to the subject charge. (Case No. 3:06cr453, Doc. No. 34, ¶ 1). That Agreement also sets forth Petitioner's stipulations that the subject offense involved fifty thousand (50,000) tablets of Ecstasy weighing more than 7,500 kilograms; and that the proper base offense level under USSG §2D1.1(a)(3) was 34. (Id. at ¶ 5(a)).

In addition, the Agreement contains a cooperation provision which explains the conditions governing any cooperation which Petitioner might have provided to the Government. Relevant here, that provision explains that if requested by the Government, Petitioner would provide only truthful information about the subject charges and about any other criminal activity within his knowledge to any Government agent or agency as designated by the Government; and that he would not violate any federal, state or local law, or any order of any court, including any conditions of his pre-trial release. (Id. at ¶¶ 23(a), (e) and (f)). The provision also explains that in the event Petitioner cooperated, the Government, in its sole discretion, would determine if that assistance was substantial and, upon a determination that the assistance was substantial, the Government could seek a reduced sentence pursuant to USSG §5K1.1 and 18 U.S.C. § 3553(e). (Id. at ¶¶ 24(a) and (b)). Last, that provision explains that even if Petitioner provided substantial assistance, if he also breached his Plea Agreement in any way, including withholding information or misleading the United States or any other law enforcement officer, the Government could, in its sole discretion, withdraw from its obligations under the Plea Agreement; that any determination that Petitioner knowingly provided false information was

within the sole discretion of the United States; and that Petitioner was waiving all objections and rights of appeal or collateral attack of those determinations. (Id. at ¶ ¶ 23(h) and 24 (d)).

On February 16, 2007, Petitioner appeared before a magistrate judge to enter his guilty plea. The magistrate judge placed Petitioner under oath and engaged him in a lengthy colloquy to ensure that he was intelligently and voluntarily tendering his guilty plea. (Case No. 3:06cr453, Doc. No. 35: Acceptance and Entry of Guilty Plea). After acknowledging, among other matters, that he was obligated to give truthful answers, Petitioner told the Court that he understood the charge and its corresponding penalties, he understood the consequences of entering his guilty plea, and he understood the terms of his plea agreement, including its cooperation provision. (Id. at pp. 2-5). Petitioner also admitted his guilt and expressed his satisfaction with counsel. (Id. at pp. 3-4). Thereafter, the magistrate judge determined that Petitioner's guilty plea was knowingly and freely given, and accepted the plea. (Id. at p. 5).

On August 11, 2008, the United States Probation Office filed a Violation Report, amended September 4, 2008, asserting that Petitioner had violated the terms of the Court's release Order by being arrested on April 5, 2008 for attempting to smuggle 33 pounds of marijuana into the State of Michigan from Canada. (Case No. 3:06cr453, Doc. Nos. 64 and 70). On September 2, 2009, the United States Probation Office filed Petitioner's Presentence Report recommending that his stipulated base offense level of 34 be increased by two points under USSG §3B1.1(c) for his having played a managerial role in the offense. (Id., Doc. No. 66). The Report also recommended that Petitioner not receive a three-point reduction under §3E1.1 for acceptance of responsibility because of his April 2008 marijuana arrest in Michigan. (Id.).

3

On September 9, 2008, the Court conducted a combined Bond Revocation, Factual Basis, and Sentencing Hearing in this matter.[1] Initially, the Court adopted the calculations in the Presentence Report. However, the Court subsequently found that Petitioner's unrebutted explanation of his 2008 arrest, given during allocution, was plausible. Therefore, the Court determined that Petitioner actually had accepted responsibility for his offense and that his correct advisory Guidelines calculations were offense level 33, criminal history category I, and a corresponding sentencing range of 135 to 168 months' imprisonment.

Thereafter, counsel for the Government advised the Court that while Petitioner had provided substantial assistance, counsel was not seeking a downward departure because Petitioner had breached his Plea Agreement by attempting to smuggle marijuana into the country and by attempting to conceal from his pre-trial services officer his arrest for that offense. In response, defense counsel orally requested a downward variance based upon Petitioner's substantial assistance. However, the Court rejected that request on the ground that Petitioner already was being given the benefit of a sentence which accounted only for the single shipment of Ecstasy involved in this case, rather than the multiple shipments in which Petitioner admittedly had participated and on the ground that the seriousness of Petitioner's offense warranted the 135-month sentence. Thus, the Court sentenced Petitioner to 135 months' imprisonment. (Case No. 3:06cr453, Doc. No. 71: Judgment).

Petitioner did not directly appeal his conviction or sentence. Instead, on August 25, 2009, Petitioner filed the instant Motion to Vacate contending that the Government had breached its plea agreement by failing to seek a reduction in his sentence under either USSG §5K1.1 or

---

[1] A transcript of this hearing has not been filed. However, the Court has reviewed a draft transcript which appears accurate.

Fed. R. Civ. P. 35(b) and that his attorney had been ineffective by failing either to argue for, or to file a motion for, a downward departure based upon his substantial assistance.

II.     STANDARD OF REVIEW

Rule 4(b) of the Rules Governing Section 2255 Proceedings directs sentencing courts promptly to examine motions to vacate. When it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the petitioner is not entitled to relief, the court must dismiss the motion. Upon consideration of Petitioner's claims, the underlying record and the relevant law, the Court has determined that the instant motion must be summarily dismissed.

III.    DISCUSSION

A.      Breach of Plea Agreement

As to his first claim of a breached Plea Agreement, the record shows that the Agreement strictly controlled the circumstances under which Petitioner could earn a sentence reduction for substantial assistance. In the Agreement, Petitioner bound himself not to violate any laws or orders of any court while on pre-trial release, and to only provide truthful information to law enforcement authorities. The Government retained sole discretion to decide whether Petitioner had breached that Agreement by providing false information. The Agreement further contained Petitioner's waiver of his right to contest -- in a collateral proceeding such as the instant one -- the Government's determination as to whether or not he had committed such a breach. The record reflects that during his Rule 11 proceeding, Petitioner swore that he understood and agreed to those terms.

The Fourth Circuit Court of Appeals has held that defendants properly may waive their rights to contest their convictions and/or sentences in collateral proceedings under § 2255, "so long as the waiver is knowing and voluntary." United States v. Lemaster, 403 F.3d 216, 220 (4th

Cir. 2005); see also United States v. Cannady, 283 F.3d 641, 645 n.3 (4th Cir. 2002) (observing that courts generally have enforced waivers of collateral review rights).

In determining whether the waiver was knowingly and voluntarily made, the Lemaster Court reiterated that "a defendant's solemn declarations in open court affirming a plea agreement . . . 'carry a strong presumption of verity.'" 403 F.3d at 221 (citing Blackledge v. Allison, 431 U.S. 63, 74 (1977)). The Lemaster Court further stated that such declarations also present "a formidable barrier in any subsequent collateral proceedings," and may be set aside only under extraordinary circumstances. Id. Thus, Lemaster instructs that "in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, may dismiss any motion that necessarily relies on allegations that contradict the sworn statements." Id. at 221-222. Consequently, inasmuch as Petitioner has not alleged or even suggested that his Plea Agreement somehow is invalid, this Court concludes that the Agreement's waiver provision is valid and fully enforceable, and it stands as an absolute bar to Petitioner's attempt to challenge his sentence.

Even if Petitioner had not waived his right to raise the instant claim, he still would not be entitled to any review because he has procedurally defaulted this claim. The Fourth Circuit has stated that "[i]n order to collaterally attack a conviction or sentence based upon errors that could have been but were not pursued on direct appeal, the movant must show cause and actual prejudice resulting from the errors of which he complains[,] or he must demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack." United States v. Mikalajunas, 186 F.3d 490, 492-493 (4th Cir. 1999). See United States v. Frady, 456 U.S. 152, 167-168 (1982); see also Bousley v. United States, 523 U.S. 624, 621

6

(1998) (failure to challenge matter on direct appeal, absent certain compelling circumstances, bars collateral review of same). In addition to failing to address the waiver of this claim, Petitioner does not address his procedural default of it. His claim of a breached Plea Agreement must be summarily dismissed.[2]

   B.   Ineffective Assistance of Counsel

Petitioner also claims that his attorney was ineffective for failing to file a motion and to argue for a downward departure based upon his substantial assistance. To establish a claim of ineffective assistance of counsel, a petitioner must show that counsel's performance fell below an objective standard of reasonableness, and that he was prejudiced by such constitutionally deficient representation. Strickland v. Washington, 466 U.S. 668, 687-691 (1984). In measuring counsel's performance, there is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance. Id. at 689; see also Fields v. Attorney General of State of Md., 956 F.2d 1290, 1297-99 (4th Cir. 1992).

The record reflects, contrary to Petitioner's assertion, that defense counsel actually did request a sentence reduction, i.e., a downward variance, based upon Petitioner's substantial assistance. Ultimately, however, the Court denied that request based upon reasons not challenged by Petitioner. Thus, to the extent that Petitioner is claiming that counsel failed to argue for a sentence reduction, his claim is factually incorrect. Moreover, because Petitioner has

---

   [2] Even if the Court were to consider the merits of this claim, it would be denied. Generally, the Government has the power, but not the duty, to make a motion for a downward departure. Wade v. United States, 504 U.S. 181, 185 (1992). A district court may inquire into the Government's refusal to move for a reduced sentence if it is shown that the refusal is "based on an unconstitutional motive." United States v. Wallace, 22 F.3d 84, 87 (4th Cir.1994) (quoting Wade, 112 S. Ct. at 1843-44). Here, Petitioner does not allege that the Government's decision not to file a §5K1.1 or Rule 35 motion was predicated upon an unconstitutional motive. He is not entitled to relief on this claim.

failed to argue or otherwise to show that he somehow was prejudiced by counsel's decision not to file a written motion for a variance in addition to making his oral motion, Petitioner's entire claim of ineffectiveness must be rejected.

IV.     CONCLUSION

The Court has considered Petitioner's Motion and the record of this matter and has found that he clearly is not entitled to relief.

**IT IS, THEREFORE, ORDERED** that:

(1)     the Petitioner's § 2255 Petition (Doc. No. 1) is **DENIED** and **DISMISSED**; and

(2)     pursuant to Rule 11(a) of the Rules Governing Section 2255 Cases, this Court declines to issue a certificate of appealability as Petitioner has not made a substantial showing of a denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong) (citing Slack v. McDaniel, 529 U.S. 473, 484 (2000)).

Signed: September 11, 2010

Robert J. Conrad, Jr.
Chief United States District Judge